**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**REGINALD Q. PATTERSON,**

    **Petitioner,**

v.                                      **CASE NO. 6:08-cv-1075-Orl-35DAB**

**ATTORNEY GENERAL, STATE OF
  FLORIDA, et al.,**

    **Respondents.**

_____/

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 12). Petitioner filed a reply to the response (Doc. No. 17).

Petitioner alleges four claims for relief in his habeas petition: 1) trial counsel was ineffective for advising Petitioner that his intended testimony would be impeached; 2) trial counsel was ineffective for failing to file a motion in limine to exclude Petitioner's prior testimony in the trial of his co-defendant; 3) trial counsel was ineffective for failing to advise Petitioner "of the self required invocation of his Fifth Amendment right"; and 4) trial counsel was ineffective for failing to object and move for a mistrial during the re-direct examination of a witness for the State.

## I. *Procedural and Factual History*

Petitioner and two other individuals (Keidrick T. Holloway and Trevor J. Payne) were charged by indictment with first degree premeditated murder (count one) and shooting into an occupied vehicle (count two). These charges arose from an incident that occurred in Melbourne, Florida at 3:00 a.m., on January 3, 2004, in which Petitioner and his two co-defendants participated in a "drive-by" shooting that resulted in the death of Lashay Copeland. The facts adduced at trial establish the following. On the evening in question, Antonio and Antwan Biggs went with their uncle, Isaac Hughey, to a nightclub where they remained until closing. (Transcript of Trial at 343-46.) They left the nightclub and stopped at a gas station where they were involved in a confrontation with Petitioner and his co-defendants, which resulted in a fist fight. *Id*. at 346-51. Antonio Biggs, Antwan Biggs, and Mr. Hughey were riding in a rental truck being driven by Mr. Hughey. *Id*. at 400-01. Eventually, all of the individuals in the confrontation left the gas station in their respective vehicles, and the Biggs brothers went home. *Id*. at 354-55.

Once home, Antonio Biggs received a call from his mother in which she requested a ride home, along with her friend Lashander Sims from a Denny's restaurant. *Id*. at 290-92. Trevon Biggs, another brother, and Lashay Copeland, his girlfriend, then went to pick them up in the truck that had been driven by Mr. Hughey. *Id*. at 293, 318-19, 408. On the way home from Denny's, Trevon Biggs came to a four-way stop sign and noticed Petitioner's vehicle stopped on the opposite side of the intersection. *Id*. 319-20, 419. Mr. Biggs then proceeded to make a left turn, and, as he entered the intersection, someone from Petitioner's vehicle fired shots at Mr. Biggs' vehicle, one of which struck and killed Ms.

Copeland. *Id*. at 420-24. Trevon Biggs was able to identify Trevor Payne as an occupant in the vehicle that shot at their truck. *Id*. at 422.

A jury trial was held, and Petitioner was found guilty as charged in the indictment. The trial court adjudicated Petitioner guilty of the crimes and sentenced him to life imprisonment as to the murder count and to imprisonment for a term of fifteen years as to the other count, with the sentences to run consecutively. Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal, which affirmed *per curiam*.

Petitioner next filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 with the state trial court, which was denied. Petitioner appealed the denial, and the state appellate court affirmed the denial *per curiam*. Petitioner then filed a petition for writ of habeas corpus with the state appellate court, which was denied.

## II.   Legal Standards

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[1] *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984),

---

[1] Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness;" and (2) whether the deficient performance prejudiced the defense.[2]  *Id*. at 687-88.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989)

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.  *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

---

[2] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

### III. Analysis

#### A. Claim One

Petitioner argues that trial counsel was ineffective for advising him that his intended testimony would be impeached. Petitioner states that he would have testified that "he confessed to activities to which he did not partake;" that his confession was "the product of threats to his life as well as his families' life;" that he told the occupants in his vehicle "not to shoot;" and that he did not shoot at the other vehicle. This claim was raised in Petitioner's Rule 3.850 motion and was denied because counsel's advice was not deficient and because he did not demonstrate prejudice.

Petitioner's testimony during Trevor Payne's bond hearing (held on August 16, 2004) and trial (held from September 6, 2005, through September 16, 2005) were introduced at Petitioner's trial. *See id.* at 645, 677-78. If Petitioner had testified at trial, his credibility would have been at issue and could have been impeached in several ways, including the introduction of statements that were inconsistent with what he now proffers his testimony would have been. *See* § 90.608, Fla. Stat. (The credibility of a witness may be attacked by introducing statements of the witness that are inconsistent with the present testimony of the witness.). During both of Trevor Payne's proceedings, Petitioner's testimony was lengthy and he denied firing any shots but admitted being in the vehicle that shot at the Biggs' vehicle. He also stated that Mr. Holloway was the only one who fired shots, and Petitioner denied that co-defendant Payne was in the vehicle or had any involvement in the shooting. Petitioner also stated that he did not know who was in the vehicle at which shots were being fired. (Transcript of Trial at 654-59, 663-64, 684-86.)

In that testimony, Petitioner did not mention that he had instructed anyone not to shoot.

Consequently, trial counsel advised Petitioner that his trial testimony could have been impeached with prior statements that were inconsistent with his proposed testimony. *See Varas v. State*, 815 So.2d 637, 640 (Fla. 3d DCA 2001) ("It is well-settled [sic] that a witness may be impeached by a prior inconsistent statement, including an omission in a previous out-of-court statement about which the witness testifies at trial . . . ."). As such, Petitioner has not demonstrated that the state court's decision was either "contrary to" or an "unreasonable application of" *Strickland*. Moreover, Petitioner has not demonstrated that the state court made an unreasonable determination of the facts in light of the evidence presented. Therefore, this claim must be denied pursuant to section 2254(d).

**B.    Claim Two**

Petitioner claims that trial counsel was ineffective for failing to file a motion in limine to exclude Petitioner's prior testimony in the trial of his co-defendant because it was cumulative of Petitioner's testimony in his co-defendant's bond hearing. This claim was raised in Petitioner's Rule 3.850 motion, and it was denied for failure to show prejudice.

Petitioner has not demonstrated that counsel acted deficiently or that Petitioner was prejudiced with regard to this matter. First, Petitioner's testimony in those proceedings was not entirely cumulative because, at his co-defendant's bond hearing, he denied firing the shotgun, *see* Transcript of Trial at 664, while at his co-defendant's trial he claimed that the shotgun jammed when he attempted to fire it. *Id*. at 689.[3]

---

[3] The Court notes that, with regard to the introduction of these matters at Petitioner's trial, under Florida law, "[a]n admission of fact or circumstance from which guilt may be inferred is admissible as a general admission against the party who made the statement." *See Perera v. State*, 873 So. 2d 389, 392 (Fla. 3d DCA 2004).

Further, assuming that Petitioner's testimony at Mr. Payne's trial had not been introduced, Petitioner's testimony at Mr. Payne's bond hearing was introduced at trial, and the jury still would have heard that evidence. At the bond hearing, Petitioner testified as to the basic facts in this case: that he had fought with the Biggs brothers on the night of the murder and that he was in the vehicle that shot at the victim's vehicle. (Transcript of Trial at 663-64.) In fact, the record reflects, and Petitioner essentially acknowledges, that his testimony at both proceedings was similar. Under the circumstances, Petitioner has not shown that the state court's denial of this claim was "contrary to, or involved an unreasonable application of, clearly established federal law" or was "based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d). As a result, Petitioner is not entitled to federal habeas relief on this claim.

## C. Claim Three

Petitioner argues that trial counsel was ineffective for failing to advise Petitioner "of the self required invocation of his Fifth Amendment right." Petitioner states that, if he had known of his Fifth Amendment right, he would have refused to offer testimony at either of Mr. Payne's proceedings. This claim was raised in Petitioner's Rule 3.850 motion and was denied because he had failed to meet either prong of the *Strickland* test.

Prior to his testimony at Mr. Payne's bond hearing, Petitioner's counsel informed the trial court that he and Petitioner had discussed the Fifth Amendment privilege not to testify. (Transcript of Trial at 655-57.) In fact, just after his testimony began, Petitioner's counsel advised him, "You don't have to testify now." Petitioner responded "Right." *Id*. at 659. Petitioner's counsel then informed the trial court that "I can't tell Mr. Patterson not to testify.

All I can tell him are the consequences of testifying, and *I told him*, and he chooses to go ahead and testify . . . ." *Id*. at 662 (emphasis added). Petitioner ignored counsel's advice and proceeded to testify.

Thus, the record reveals that Petitioner's counsel had advised him of his Fifth Amendment privilege, that Petitioner was fully aware of his Fifth Amendment privilege, and that, despite this knowledge, Petitioner chose to testify. As such, there has been no showing that Petitioner's counsel acted unreasonably. Consequently, Petitioner has not shown that the state court's denial of this claim was "contrary to, or involved an unreasonable application of, clearly established federal law" or was "based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d). As a result, Petitioner is not entitled to federal habeas relief on this claim.

### D. Claim Four

Petitioner states that trial counsel was ineffective for failing to object and to move for a mistrial based on the re-direct examination of a State witness. The following colloquy occurred during the re-direct examination of Antwan Biggs:

> Q. Why did you have the kids taken away from your house?
>
> A. Because we've been in altercations with him before, and they have shot at a couple of our friends before.
>
> Q. You were expecting a problem?
>
> A. Yes, ma'am.

(Transcript of Trial at 397.) According to Petitioner, this testimony characterized Petitioner "as a violent person who had the propensity to shoot at people." This claim was raised in Petitioner's Rule 3.850 motion and was denied because there had been no showing of

9

prejudice.

This claim is without merit. First, Petitioner has not shown that there was any basis upon which to object to this questioning. Next, assuming that there was an available objection, Petitioner has not shown prejudice since he testified at Mr. Payne's bond hearing that he previously had been involved in fights with Antwan Biggs and Antonio Biggs and that those "fights led to shooting." *Id*. at 667. Consequently, even if the objection had been sustained, the jury still would have heard testimony about previous fights and shootings. As such, Petitioner failed to demonstrate that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this claim in his Rule 3.850 motion.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## **CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Reginald Q. Patterson is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3. This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of

a constitutional right. Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE** and **ORDERED** in Orlando, Florida, this 2nd day of September 2010.

*[signature]*
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies to:
sa 9/2
Counsel of Record
Reginald Q. Patterson